IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

FRANK ORR,

    Plaintiff,

v.

ADRIANA HERNANDEZ, et al.,

    Defendants.

NO. CV-08-0472-JLQ

**ORDER GRANTING DEFENDANT MEDINA'S MOTION TO DISMISS; DENYING DEFENDANT HERNANDEZ'S MOTION FOR SUMMARY JUDGMENT**

## I. PROCEDURAL HISTORY

Plaintiff Frank Orr ("Plaintiff") is a state prisoner proceeding pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. At all relevant times Plaintiff was in the custody of the California Department of Corrections and Rehabilitation (CDCR) at Mule Creek State Prison (MCSP) in Ione, California. Plaintiff's § 1983 action was removed from Superior Court of the State of California on February 28, 2009, having been originally filed in the state court on October 9, 2007.

On June 24, 2010, the court granted Plaintiff leave to file a Second Amended Complaint and directed that it be served upon Defendants Adriana Hernandez and E. Medina. ECF No. 42. The court screening Order determined that the Second Amended Complaint stated cognizable claims for (1) excessive force claims against Sgt. Medina and two unnamed "second watch" Doe officer defendants; and (2) a retaliation claim against Defendant Hernandez. *Id*. An Order directing service of the Second Amended Complaint was entered on August 30, 2010. Defendant Hernandez Answered on November 3, 2010. A Scheduling Order was entered on December 17, 2010, imposing a discovery deadline of July 1, 2011 and dispositive motion deadline of August 1, 2011. ECF No. 59.

ORDER - 1

**A.    Discovery**

This case was delayed months while steps were taken to identify and serve Defendant Medina (and the Doe Defendants, who remain unidentified).  Service was not directed upon Medina until June 2, 2011 (ECF No. 73) and Medina did not otherwise appear in this case until the filing of the presently pending Motion to Dismiss (ECF No. 84) on <u>August 1, 2011</u> (the court's deadline for the filing of dispositive motions).  ECF No. 59. Also filed that day, was a Motion for Summary Judgment on behalf of Defendant Hernandez.  ECF No. 85.

In April 2011, Plaintiff was transferred from Mule Creek State Prison (MCSP) to Richard J. Donovan Correctional facility in San Diego, California.  Plaintiff has filed multiple documents describing his current conditions of confinement at Richard J. Donovan which are unrelated to his claims asserted herein (though he claims that since he filed his complaints against Defendant Hernandez in 2006 his life has been a "living hell" (ECF No .77)).  He states his ability to prosecute this case has been hampered due to his placement in administrative segregation. Plaintiff claims that as a  result, he has experienced delays and limited access to his legal materials, to the law library, and generally, to help.  ECF No. 74, 77, 79, 80, 81.

Plaintiff states he was not allowed access to a legal library until June 7, 2011. He then prepared discovery directed to Defendant Hernandez and mailed it to defense counsel on June 14, 2011.  He sent a second set of interrogatories and requests for admission received by defense counsel on June 28, 2011.  In letters to Plaintiff, defense counsel informed Plaintiff that Hernandez was refusing to respond to the discovery because it was not served at least forty-five days in advance of the discovery cut-off, July 1, 2011.  ECF No. 77, 80, Ex. A.  Plaintiff then filed a Motion to Compel, asking Defendant Hernandez to respond to fourteen requests for production.    ECF No. 75. Defendant Hernandez opposed the Motion due to the  untimely nature of the discovery requests. ECF No. 76.  On July 27, 2011, in a letter to the court, Plaintiff requested an extension of time to conduct  discovery.  ECF No. 82.

ORDER - 2

On August 1, 2011, the Defendants Medina and Hernandez filed their dispositive motions. Defendant Medina filed a Motion To Dismiss (ECF No. 84) based upon a claim that the Plaintiff failed to exhaust his administrative remedies prior to filing the action against Medina. Defendant Hernandez filed a Motion For Summary Judgment, ECF No.85, but that Motion was not based upon the administrative remedy defense. After receiving these motions and learning that Sgt. Medina had now appeared in the case through counsel, Plaintiff prepared discovery directed to Medina, including requests for admission and interrogatories. On August 4, 2011, Plaintiff filed a Motion For Discovery including additional requests for production of documents from both Defendants. ECF No. 86. On August 10, 2011 Plaintiff responded to Defendant Hernandez's Motion For Summary Judgment with an eight-page declaration and attached exhibits. ECF No. 87. Defendant Hernandez replied on August 15, 2011. ECF No. 88.

In reviewing the Defendants' motions the court is mindful of the fact that Plaintiff has not yet received his requested discovery and has requested additional time.

## II. EXCESSIVE FORCE CLAIM AGAINST MEDINA

Plaintiff's Second Amended Complaint alleges that on July 14, 2006, Defendant Medina and two unidentified second watch officers "knowingly, maliciously and sadistically inflicted physical and mental abuse" upon Plaintiff when they handcuffed and escorted Mr. Orr to administrative segregation. Plaintiff alleges Defendants placed the cuffs in a " manor (sic) which was against policy as to dig and or cut into the wrist..." ECF No. 43. Defendant Medina has moved to dismiss Plaintiff's Eighth Amendment excessive force claim for failure to exhaust administrative remedies under the Prison Litigation Reform Act.

### A. Legal Standards
### 1. Exhaustion

The Prison Litigation Reform Act, 42 U.S.C. § 1997e, requires that a prisoner exhaust available administrative remedies before bringing a federal court action concerning prison conditions including claims for injuries under 42 U.S.C. § 1983. *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing 42 U.S.C. § 1997e(a)).

ORDER - 3

"[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). This means that a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Marella v. Terhune*, 568 F.3d 1024, 1027 (9th Cir. 2009) (quoting Ngo, 548 U.S. at 88, 126 S.Ct. 2378).

"The California prison system's requirements 'define the boundaries of proper exhaustion.' " *Marella*, 568 F.3d at 1027 (*quoting Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007)). A prisoner must file a grievance within fifteen working days of the event or decision that is the subject of his complaint, unless he lacked the opportunity and ability to file within that period. *Id.* Three levels of formal review are provided, and a prisoner exhausts the grievance process when he completes the third level. Cal.Code Regs. tit. 15 § 3084.1(a). Once he has been " 'reliably informed by an administrator that no remedies are available,' " however, a prisoner is "not required to 'exhaust further levels of review.' " *Marella*, 568 F.3d at 1027 (*quoting Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005)).

### 2. Unenumerated Rule 12 Motion

The failure to exhaust administrative remedies under the PLRA is treated as a matter in abatement and is properly raised in an unenumerated Rule 12(b) motion. *See Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir.), cert. denied, 124 S.Ct. 50 (2003). Exhaustion is an affirmative defense. Establishing exhaustion of administrative remedies under the PLRA is not a pleading requirement or a jurisdictional prerequisite. *Wyatt*, 315 F.3d at 1119. Therefore, Defendant Medina bears the burden of proving that the Plaintiff had available administrative remedies that he did not utilize. *Id* . "In deciding a motion to dismiss for a failure to exhaust non-judicial remedies, the court may look beyond the pleadings and decide disputed issues of fact." *Wyatt*, 315 F.3d at 1119-20. "I[f] the district court looks beyond the pleadings to a factual record in deciding the motion to dismiss for failure to exhaust-a procedure closely analogous to summary judgment-then the court must assure that [the prisoner] has fair notice of his opportunity to develop a

ORDER - 4

record." *Id.* at 1120, n. 14. Should the court find that the prisoner has not exhausted non-judicial remedies through the California appeal process, the claim should be dismissed without prejudice. *Id.* at 1119-20.

### B. Analysis

Defendant Medina has filed evidence showing Plaintiff has not properly exhausted his excessive force claim. In support of the Motion to Dismiss, Defendant Medina has proffered the declarations of D. Minnatee, the appeals coordinator employed at MCSP and D. Foston, Chief of the Office of Appeals for the CDCR. Prison records show that none of the grievances submitted by Plaintiff between July 14, 2006 (the date of the alleged incident) and October 9, 2007 relate to Defendant Medina (or any other officer) or any alleged use of force on July 14, 2006 during his movement to administrative segregation. Plaintiff has not addressed Defendant Medina's exhaustion argument in his August 10, 2011 response. Eastern District Local Rule 230(l) concerning motions in prisoner actions states: "Failure of the responding party to file an opposition or to file a statement of no opposition may be deemed a waiver of any opposition to the granting of the motion and may result in the imposition of sanctions."

### C. Conclusion As To Medina Motion To Dismiss

Defendant Medina has met his burden of demonstrating that Plaintiff failed to exhaust his administrative remedies prior to filing suit as required by 42 U.S.C. § 1997e(a). Defendant Medina has shown an absence in the official records of any evidence that Plaintiff filed an inmate administrative claim or appeal concerning Plaintiff's allegations of excessive force by Medina before the court complaint against Medina was filed. Plaintiff has not submitted evidence of any claim or appeals that satisfy the exhaustion requirement. Therefore, the court must dismiss Plaintiff's excessive force claims against Defendant Medina and the Doe Defendants, without prejudice, based on Plaintiff's failure to exhaust. Further court action on the excessive force discovery and other motions is accordingly unnecessary.

ORDER - 5

## III. SUMMARY JUDGMENT MOTION ON RETALIATION CLAIM AGAINST DEFENDANT HERNANDEZ

### A. Summary Judgment Standard

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. *See* Fed.R.Civ.P. 56(e); *Matsushita*, 475 U.S. at 586 n. 11. The opposing party must demonstrate that the fact in contention is material,

ORDER - 6

i.e., a fact that might affect the outcome of the suit under the governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Wool v. Tandem Computers, Inc.*, 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv.*, 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.' " *Matsushita*, 475 U.S. at 587 (quoting Fed.R.Civ.P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, the submissions on file, together with the affidavits. Fed.R.Civ.P. 56© ). The evidence of the opposing party is to be believed. *See Anderson*, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *See Matsushita*, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244–45 (E.D.Cal.1985), aff'd, 810 F.2d 898, 902 (9th Cir.1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts .... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

**B.    Facts Pertaining To Hernandez Claim**

Defendant Hernandez, a correctional officer at MCSP, moves for summary judgment on Plaintiff's claims for retaliation in alleged violation of the Plaintiff's First

ORDER - 7

Amendment rights. There are two claims of retaliatory conduct at issue, one in 2006 and another in 2008. First, Plaintiff alleges that in July 2006, in retaliation for grievances filed against her and three other inmates, Hernandez filed "a fabricated report" that Plaintiff had threatened to stab her with a pair of scissors. As a result, Plaintiff was placed in administrative segregation and lost his job as a prison barber for Facility C's gym. Plaintiff then alleges that in 2008 Hernandez requested and was reassigned to the facility where Plaintiff was housed. Plaintiff claims Hernandez then lodged a threat assessment against him to retaliate against him for filing his lawsuit against her and to coerce him into dropping that action against her. ECF No. 43 at 8.

The summary judgment evidence proffered by Defendant Hernandez is pitiably meager. It includes <u>three</u> exhibits: a single declaration of the Defendant, a single document (CDC 1030 form), and a three-paragraph declaration of the records custodian of the CDCR. In order for the court to comprehend the underlying facts, it has been necessary to review all of the documentary evidence in the entire court record, including exhibits supplied by Plaintiff earlier in the litigation. These submissions include *some* of the institutional record, such as grievance records/responses, forms, and prison staff correspondence with Plaintiff. Defendant Hernandez urges the court to reject Plaintiff's summary judgment opposition as "procedurally deficient" (ECF No. 88 at 1) -- yet without it, an understanding of the factual circumstances of the case would be impossible.

**1. Background**

It is undisputed that all times relevant to this action, Defendant Hernandez was employed by the CDCR as a correctional officer. As of the present year, she has been employed by CDCR for twenty-two years. MCSP has three facilities - A, B, and C. Building 1-5 are located in Facility A, Buildings 6-10 are located in Facility B, and Buildings 11-15 are located in Facility C. Defendant Hernandez transferred to Facility C, Building 14 on February 28, 2005. Plaintiff worked as a barber at the gym for Facility C. Prior to the alleged acts of retaliation, Plaintiff claims to have filed two grievances

ORDER - 8

involving Hernandez: Log Numbers  MCSP 06-1239 and 06-1308.  As for grievance No.06-1239,  though Plaintiff's response to the summary judgment asserts a copy of this grievance was attached to a declaration filed earlier, <u>the court is unable to locate this document in the record</u>.   Plaintiff contends it was this grievance which caused three inmates who he considered a threat and who were close to Hernandez to be moved out of Building 14.  Plaintiff contends that around **July 10, 2006**, the lieutenant of the C-yard, Lt. Sweany called Plaintiff into his office to address this grievance (06-01239)**.**  Plaintiff claims Lt. Sweany assured him he would not be moved out of Building 14 or off of C-yard, that the three inmates Plaintiff considered a threat to him would be moved out of 14 for being "too familiar" with Hernandez, and that Plaintiff would not be retaliated against.   Plaintiff states that as a result of his discussion with Lt. Sweany, he withdrew this grievance.  Plaintiff contends that in fact the three threatening inmates were eventually moved out of Building 14 for being "over familiar" with Hernandez.

On June 19, 2006, Plaintiff also filed grievance **06-1308**.  ECF No. 87.  In this grievance, Plaintiff reported that his cellmate had told him that Hernandez had inappropriately introduced herself to the cellmate's family and thereafter inquired with the cellmate about Plaintiff.  What his cellmate told him made Plaintiff skeptical about Hernandez's intentions, so Plaintiff told his cellmate to report the conduct.  Prior to filing his own grievance, Plaintiff claims to have talked to his boss, corrections officer P. Norman, who Plaintiff claims advised him to "cover [his] ass."  In the grievance, Plaintiff also stated that Hernandez was acting "crazy."  He asked that he 1) not be retaliated against (specifically, that he not be moved out of the building or the yard; 2) that "C/O Hernandez get some kind of treatment (Mental Health Evaluation/Stress Treatment); (3) that Hernandez  "be removed from the three informants (inmates)  whom she is over-familiar with" and "real close with", and treats "like family" and with whom Plaintiff was "having problems with" (elsewhere identified as inmates Perez, Valenzuela, Cordova); (4) that C/O Norman (Plaintiff's boss for his work as a barber whom he discussed this with) "be questioned about these allegations".  ECF No. 87 at 14.  Plaintiff appealed

ORDER  - 9

this grievance to the Third Level, where it was denied on November 15, 2006. ECF No. 35 at 66.

### 2. July 2006 Incident

Hernandez asserts in her declaration that "sometime in July 2006" she noticed that Plaintiff was going to the gym every morning and that she knew that Plaintiff was not scheduled to be at the gym every morning. Hernandez states that she and her partner, corrections officer Norman, questioned Plaintiff as "why he was defying his work schedule" in being at the gym at times other than when he was scheduled to work. Hernandez does not state *when* this alleged conversation took place. Plaintiff denies that his boss, officer Norman, ever talked to him about defying his work schedule. ECF No. 87 at 3. The record does not contain a declaration of P. Norman.

Hernandez claims that on July 15, 2006 (just days after Plaintiff claims Sweany acted upon his grievance against her) she "received information from one of the inmates in Facility C, Building 14" that after she had questioned Plaintiff about his trips to the gym, Plaintiff "became upset and threatened to stab [Hernandez] in the neck with scissors." ECF No. 85 at ¶ 11. Defendant Hernandez reported the informant's allegation of a threat toward her to her supervisor, Sergeant D. Brown. Following her meeting with Brown, Hernandez claims she generated "a one-page handwritten summary of Orr's threat, in accordance with my supervisor, Sergeant D. Brown's, instructions to me." ECF No. 85 ¶ 14. The record does not contain a copy of the handwritten summary or a declaration of D. Brown.

The record includes a copy of a "Confidential Information Disclosure Form" (CDC 1030) dated July 15, 2011, issued to Plaintiff, and authored by someone other than Hernandez. The signature is illegible. ECF No. 85, Ex. B. The CDC 1030 informed Plaintiff that confidential information was obtained and that it was considered in the generation of a "CDC 115, Disciplinary Report dated 7-15-2006 submitted by A. Hernandez, C/O." *Id*. Under the section of the form titled "Reliability of the Source" (of information), a box is checked that indicates "This source has previously provided

ORDER - 10

confidential information which has proven to be true." *Id.*

As a result of Hernandez's report of an alleged threat, Plaintiff was handcuffed in his cell, removed from his assigned housing, and placed in administrative segregation in Building 12, where he no longer could work as a prison barber. ECF No. 87 at 4. Plaintiff remained in administrative segregation ("ad-seg") for **over six months** while the institution investigated Hernandez's report of the information she claimed was provided by an informant. Five days after his placement in ad-seg, an administrative review committee held a hearing and determined (Form 128G): "Per the CDC-114D...[t]he information indicated that *the Subject had filed a staff complaint against Officer Hernandez and that if the outcome was not in his favor*, he was going to stab her with a pair of scissors...As a result, [Plaintiff] received a CDC 115 for Threatened to Assault Staff dated 7/15/06 Log # C07/06-037." ECF No. 87 at 26. The committee determined to keep Plaintiff in administrative segregation "pending completion of investigation by ISU [Investigative Services Unit]." *Id.*

Notably, despite the information suggesting otherwise in the CDC 1030 and 128G forms, Hernandez denies having generated a disciplinary report (ECF No. 85, ¶ 14) and Plaintiff was never required to respond to a CDC 115 for making a threat. After records requests were made by Plaintiff, he was advised by records staff that a disciplinary report for this incident was never issued, filed, or written against Plaintiff. ECF No. 35 at 58, 71-76; ECF No. 85, Ex. C.  Plaintiff was advised that Log # C07/06-037 was utilized in the charges of another inmate. ECF No. 39 at 13. <u>CDC 115 Log # C/07/06-037 is not part of the record</u>.

Plaintiff contends that Hernandez was motivated to file a false report against him because prior to July 15, 2006 Hernandez had learned about the complaints he had made against her and three other inmates which he had alleged she was "overly familiar" with. One inmate was Johny Cordova, whom Plaintiff considered a threat. Plaintiff contends that Lt. Sweany talked to Hernandez about this grievance, and that in fact, inmate Cordova was punished for his connection to Hernandez. ECF No. 87 at 2. Plaintiff

ORDER - 11

1 alleges Hernandez conspired with Inmate Cordova, in order to knowingly report a false
2 accusation against him, which Hernandez knew would result in Plaintiff's punishment.
3       Hernandez opposes this version stating in her declaration that her sole motivation
4 in informing Brown of the alleged threat was to ensure her "institutional safety and
5 security" and "to ensure Plaintiff was unable to carry-out his threat."  Hernandez Decl.
6 ¶ 17. Although the CDC 128G committee hearing report suggests otherwise,  Hernandez
7 denies she was aware of Plaintiff's grievances involving her, and asserts she did not
8 become aware of the grievances until February 2008.
9       On <u>August 16, 2006</u>, Plaintiff filed a grievance, Log No. 06-1893, complaining
10 he was in administrative segregation based upon false accusations for something he did
11 not say or do, that as a result he had lost his job and wages he would have otherwise
12 earned.
13      On <u>January 4, 2007</u>, the Committee released Plaintiff from Ad-Seg to Facility B
14 stating in its report: "The Committee notes that Internal Affairs recently rejected the case
15 and therefore Inmate Orr's retention in Ad-Seg is no longer warranted." <u>The record does</u>
16 <u>not contain any report or declaration from "Internal Affairs</u>."  Plaintiff was never
17 formally disciplined.  He claims this was because the allegations reported by Defendant
18 Hernandez were proven untrue, and Hernandez knew this all along.
19     **3. Plaintiff Files Suit**
20     After his release from ad-seg in January 2007, while housed in Facility B,
21 Building 9, Plaintiff claims he was a "model prisoner" employed as a law library porter
22 in the B-yard. ECF No. 43 at 11.  On October 9, 2007, Plaintiff filed this lawsuit against
23 Hernandez in Amador Superior Court of the State of California.  ECF No. 87 at 30.
24     **4. February 2008 Incident**
25     Three months after Plaintiff filed the state court action and on January 9, 2008,
26 Hernandez made a bid for transfer to the same Facility and the same building where
27 Plaintiff was housed. For a correctional officer at MCSP to transfer to a different housing
28 unit, the following procedure is followed: (1) the assignments office posts jobs that

ORDER - 12

correctional officers can bid for according to their seniority number; (2) the Assignment Officer assigns each correctional officer a date and time for bidding; (3) once a correctional officer makes a bid request, the Assignment Officer records the offer's name and ID number, as well as the post number requested; and (4) after all bid positions have been submitted, the Assignment Sergeant publishes the assignment and start dates. It takes about thirty days for a bid request to be granted. Hernandez Decl. ¶ 7.

Hernandez claims that the reason she made the bid was because working there would give her part of the weekend off. She claims that she was unaware where Plaintiff was housed. However, Plaintiff disputes this fact claiming Hernandez had in fact occasionally worked the same yard where he was housed numerous (over 80) times. Plaintiff claims the reason she made the bid for reassignment was because she was served notice of the lawsuit he had filed in October, and she intended to retaliate again against him *again* intending to cause him to lose his job in the library where he was obtaining the help to pursue his lawsuit against her. Fearing this was the case, on January 16, 2008, Plaintiff wrote a letter to the MCSP Warden, M. Martel stating as follows:

> ...word is that c/o Hernandez is coming over to this yard, my tier, to work as a building officer in the same building that I live in...I have no problem with that or her...The problem I had was with the three inmates she was over-familiar with....I wish not to be retaliated on behind the problems she brought on herself....why do you thinks he wants to work in the same building same t[i]ear I'm on. Sir all my building officers can't say one bad word on me. And I do not want to move. There is no reason to change anything about my program. I'm doing well.

ECF NO. 35 at 64.

On January 30, 2008, the Facility B Captain, D.E.Gibb responded to Plaintiff's letter stating:

> Any allegations concerning staff misconduct are taken seriously. All staff personnel matters are confidential in nature. As such, result of any inquiry/investigation will not be shared with staff, members of the public, or inmates....Should you have problems with any staff while housed on Facility 'B', you may contact the Facility 'B' supervisors. In addition, your Correctional Counselor (CCI), S. Winkler, can help you address your concerns."

Hernandez was reassigned and began working on February 11, 2008 in Building

ORDER - 13

9 where Plaintiff was housed. Hernandez claims she saw Plaintiff on the morning of February 11, 2008, and then "immediately told Lieutenant Rendon about Plaintiff's threat toward her in 2006." ECF No. 85, ¶ 24. Hernandez claims the sole reason she told Rendon this was to "ensure that Plaintiff did not attack her" as she was "worried that Plaintiff might still hold a grudge against her and might attempt to assault her." *Id*. at ¶ 25. Lt. Rendon apparently immediately made arrangements for Plaintiff to be moved to Building 10. Plaintiff alleges Lt. Rendon knew there was no actual threat, but moved him "to please Hernandez." ECF No. 87 at 7. <u>The record does not contain a declaration of Lt. Rendon</u>. Plaintiff was thereafter placed in administrative segregation. It is unclear when this took place. Plaintiff asserts that it was either the next day or March 4, 2008. Plaintiff claims he was placed in administrative segregation again because all the documents regarding Officer Hernandez had been mysteriously removed from his file and his file had to be reconstructed by prison staff. Plaintiff was then eventually transferred out of MCSP.

**III.    Analysis**

    **A.  First Amendment Legal Standard**

Inmates cannot be retaliated against for exercising First Amendment rights. These rights include the rights to file prison grievances and to pursue civil rights litigation in the courts. *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2009). "Without those bedrock constitutional guarantees, inmates would be left with no viable mechanism to remedy prison injustices. And because purely retaliatory actions taken against a prisoner for having exercised those rights necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield." *Id*.

Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not

ORDER - 14

reasonably advance a legitimate correctional goal. *Id*. at 567-68.

### B. Analysis

As in *Rhodes*, Plaintiff's Second Amended Complaint alleges "the very archetype of a cognizable First Amendment retaliation claim." He alleges that Hernandez *twice* <u>knowingly</u> reported a false allegation that Plaintiff had threatened her. He claims this action by Hernandez was because he had exercised his First Amendment right to file prison grievances and a lawsuit against her. He states that these actions had a chilling effect on his First Amendment rights when he was confined to administrative segregation *twice*, the first time for over six months, the second time resulting in his transfer, and both times resulted in his loss of prison jobs. Finally Plaintiff claims that these actions were not undertaken to advance a legitimate penological purpose. *See, e.g., Gomez v. Vernon*, 255 F.3d 1118, 1127 (9th Cir. 2001) (holding that "repeated threats of transfer because of [the plaintiff's] complaints about the administration of the [prison] library" were sufficient to ground a retaliation claim); *Hines v. Gomez*, 108 F.3d 265, 269 (holding that the retaliatory imposition of a ten-day period of confinement and loss of television-justified by a correctional officer's false allegation that the plaintiff breached prison regulations-violated the First Amendment); *Pratt*, 65 F.3d at 807 ("[I]t would be illegal for [corrections] officials to transfer and double-cell [plaintiff] solely in retaliation for his exercise of protected First Amendment rights."); *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir.1989) (holding that, if correctional officers indeed called plaintiff a "snitch" in front of other prisoners in retaliation for his filing grievances, it would violate the First Amendment); *Harris v. Ostrout,* 65 F.3d 912 (11th Cir. 1995)(district court erred by granting summary judgment on claim that corrections officer filed disciplinary violations because of prisoner's prior litigation activities).

### B.  Element 2: "Because Of"

Defendant Hernandez claims Plaintiff cannot prove his retaliation claims because protected conduct was not the basis of Hernandez's actions. Instead, Hernandez claims Plaintiff's grievances could not have been the basis of her conduct because she "was not

ORDER - 15

even aware of it" (referring to only the grievance filed in June 2006). The only evidence Defendant offers in support of this contention is Hernandez's self-serving declaration, which Plaintiff disputes.

Plaintiff contends Lt. Sweany talked to both he and Hernandez in order to resolve the earlier filed grievance (regarding Hernandez and the three other inmates). The ad-seg committee report from July 20, 2006 supports Plaintiff's position that Hernandez knew of Plaintiff's grievance(s) because it summarizes the information Hernandez reported as follows: "...that the Subject *had filed a staff complaint against Officer Hernandez and that if the outcome was not in his favor*, he was going to stab her with a pair of scissors..."  Additional evidence favorable to Plaintiff on the issue of motivation includes Hernandez's admission that her goal in reporting the information to her supervisor was solely to "make sure Orr didn't have access to scissors anymore." Tellingly, it was not to find out whether the information she had received from the unnamed inmate informant was accurate or truthful. Other evidence likely relevant, but noticeably missing from the record, includes the "handwritten summary" Hernandez claims she wrote documenting the alleged threat, the CDC-114D and 115 referenced in the CDC 128G committee report dated 7/20/2006, the internal investigation relied upon in 2007 to release Plaintiff from ad-seg, and any declaration of Lt. Sweany.

As to the February 2008 incident, Hernandez's moving brief evidences a misunderstanding of the nature of Plaintiff's claim. Hernandez analyzes whether Hernandez's February 2008 transfer to Orr's housing unit was motivated by Orr's filing of a grievance in June 2006. First, the alleged adverse action taken was not Hernandez's transfer to the housing unit, but rather Hernandez's report to Lt. Rendon that Plaintiff had threatened her, knowing the report would result in his transfer and the loss of his job at the prison library. Second, Plaintiff claims the alleged motivation for the conduct, was not only the 2006 grievance<u>s</u>, but rather the lawsuit Plaintiff had filed in state court against Hernandez in October 2007.

ORDER - 16

On the record as it is presently before the court, Defendant Hernandez has not carried her summary judgment burden as a matter of law. There are significant holes in the record, and questions of fact as to whether Hernandez knowingly made false accusations against Plaintiff motivated by Plaintiff's protected activities. Moreover, the record demonstrates that additional discovery by Plaintiff could produce evidence helpful to his retaliation claim and uncover specific facts significant to the summary judgment. The record in its current state presents classic he said/she said factual questions, that are improper for the court to resolve on summary judgment.

**C. Qualified Immunity**

Defendant Hernandez also argues that in the alternative, she is entitled to qualified immunity from plaintiff's § 1983 claims for retaliation. "A finding of qualified immunity depends on a two-part inquiry by the court." *Peng v. Mei Chin Penghu*, 335 F.3d 970, 976 (9th Cir.2003) (*citing Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) overruled on other grounds by *Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). The court must determine whether the facts alleged, "taken in the light most favorable to the party asserting the injury," show the violation of a constitutional right, and whether the right was clearly established at the time of the violation. *Id; See Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir.2007) (*citing Beier v. City of Lewiston*, 354 F.3d 1058, 1064 (9th Cir. 2004) ("Defendants are entitled to such relief only if the facts alleged and evidence submitted ... show that their conduct did not violate a federal right; or, if it did, the scope of that right was not clearly established at the time.").

It has been well established for many years that an inmate may not be retaliated against for writing grievances or filing lawsuits. *See, e.g., Soranno's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989) ("Deliberate retaliation by state actors against an individual's exercise [First Amendment rights] is actionable under section 1983."). In this case, qualified immunity is precluded based on the disputed facts which, if true as presented by Plaintiff, are unconstitutional acts of which a reasonable prison

ORDER - 17

official would know. Therefore, summary judgment based on qualified immunity is precluded at this stage.

### D. Conclusion

The court is cognizant that claims of retaliation in the prison context are prone to abuse and must be carefully considered. However, Plaintiff must be afforded the opportunity to develop evidence crucial to the material issues in the case -- which in this instance, is primarily the motivation behind Hernandez's conduct. The court notes that in addition to the missing documentary evidence the court has identified, Plaintiff has named numerous prison officials who were involved in or aware of the incidents of alleged retaliation whose testimony may help the Plaintiff. Because the record is not fully developed, the court cannot determine whether the evidence is sufficient to warrant a trial on Plaintiff's retaliation claims against Hernandez. It may be that this is a case where Plaintiff should have an opportunity to present his case so a trier of fact with a meaningful search for the truth. The court will permit the parties the opportunity for additional discovery after which the court will permit any party the opportunity to file dispositive motions. The court reminds Plaintiff that a nonmoving party cannot defeat summary judgment by relying on the allegations in the complaint, or with unsupported conjecture or conclusory statements. *Hernandez v. Spacelabs Medical, Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003). Local Rule 260 on motions for summary judgment requires the following:

> Any party opposing a motion for summary judgment or summary adjudication shall reproduce the itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial. The opposing party may also file a concise "Statement of Disputed Facts," and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication. The opposing party shall be responsible for the filing of all evidentiary documents cited in the opposing papers. See L.R. 133(j).

ORDER - 18

## IV. CONCLUSION AND ORDER

**Accordingly, IT IS HEREBY ORDERED:**

1. Defendant Medina's Motion to Dismiss (**ECF No. 84**) is **GRANTED**. Plaintiff's claims for excessive force alleged in the Second Amended Complaint (ECF No. 43) against Defendant Medina and the two John Doe Corrections Officers shall be **DISMISSED** without prejudice for failure to exhaust administrative remedies. There being no just reason for delay, the Clerk of the Court shall enter final judgment pursuant to Fed.R.Civ.P 54(b) dismissing the claims asserted in the Second Amended Complaint against Defendants Medina and John Does # 1 and #2 without prejudice.

Defendants are not required to respond to Plaintiff's Request for Production of Documents (ECF No. 86) filed August 4, 2011, which relate solely to the excessive force claims. The Clerk of the Court shall have the docket reflect that **ECF No. 86** is **DENIED**.

2. Defendant Hernandez's Motion for Summary Judgment (**ECF No. 85**) is **DENIED**.

3. Plaintiff's Motion for Extension of Time (**ECF No. 82**) is **GRANTED**. The discovery and dispositive motion deadlines set forth in the court's Scheduling Order (ECF No. 59) are **amended** as set forth herein. The parties shall have until **January 15, 2012** to conclude additional discovery on Plaintiff's First Amendment retaliation claims against Defendant Hernandez. Plaintiff's Motions to Compel (**ECF No. 75** and **ECF No. 77**) are **GRANTED in part**, as set forth below and only as to the First Amendment retaliation claims.

4. **Within twenty (20)** days of this Order: Defendant shall respond to Plaintiff's request for production **and** Defendant Hernandez and the Warden of the MCSP shall immediately produce:

    a. Any and all forms, reports, findings and conclusions, witness reports, or any other relevant documentary evidence in their possession, custody or control, concerning Plaintiff's grievances involving Hernandez (including but not limited to

ORDER - 19

MCSP 06-1239, 06-1308, 06-1893);

  b. Hernandez's report regarding Plaintiff made on or about July 15, 2006, and her report regarding Plaintiff made on or about February 11, 2008.

  c. If necessary, Defendant may promptly file an affidavit, in camera, enumerating the documents in its possession and the basis for any opposition to Plaintiff's discovery of such document.

 5. To the extent the discovery propounded is relevant to the claims of retaliation against Defendant Hernandez, Defendant shall respond to Plaintiff's discovery received by defense counsel on June 14, 2011 and June 28, 2011, **within twenty (20) days** of this Order.

 6. Plaintiff and defense counsel shall cooperate in discovery and work diligently in order to accomplish the completion of discovery in the time frame allotted.

 7. The deadline for filing pre-trial dispositive motions shall be **February 15, 2012**.

 The Clerk shall enter this Order and forward copies to the Plaintiff and counsel for the Defendants.

 Dated September 22, 2011.

     s/ Justin L. Quackenbush
     JUSTIN L. QUACKENBUSH
    SENIOR UNITED STATES DISTRICT JUDGE

ORDER - 20